**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: June 1 2015

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 11-36509 |
| | ) | |
| Christopher J. Botson and | ) | Chapter 7 |
| Kymberly A. Botson, | ) | |
| | ) | Adv. Pro. No. 14-3056 |
| Debtors. | ) | |
| | ) | Judge John P. Gustafson |
| Kymberly A. Botson, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Citizens Banking Company, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER REGARDING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs Kymberly A. Botson and Christopher J. Botson are the debtors in the underlying Chapter 7 case. On May 2, 2014, Plaintiffs commenced this adversary proceeding, requesting injunctive relief against Defendant Citizens Banking Company ("Defendant" or "CBC") for alleged violations of 11 U.S.C. §524 and 11 U.S.C. §524(a)(2). [Doc. # 1]. Specifically, Plaintiffs allege that

Defendant's refusal to remove a 2009 UCC-1 financing statement, and Defendant's filing of a UCC-3 continuation statement, are violations of the discharge injunction. This proceeding is now before the court on Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") [Doc. # 23], Defendant's Combined Motion for Summary Judgment and Memorandum Contra to Plaintiffs' Motion ("Defendant's Motion") [Doc. # 24], Plaintiffs' Response in Opposition to Defendant's Motion ("Plaintiffs' Response") [Doc. # 29], and Defendant's Reply to Plaintiff's Response ("Defendant's Reply") [Doc. # 33].

Having considered the parties' respective arguments, for the reasons that follow, Plaintiffs' Motion will be denied, and Defendant's Motion will be granted.

## FACTUAL BACKGROUND[1]

Unless otherwise indicated, the following facts are not in dispute. In 2009, Plaintiffs and Defendant entered into a loan and security agreement.[2] At the time they received the loan, Plaintiffs were the owners of The Fremont Agency, Inc., an insurance agency with two locations. [Case No. 11-36509, Doc. # 12, p. 4]. On March 20, 2009, as part of the loan transaction, Defendant filed a UCC-1 financing statement with the Ohio Secretary of State. [Doc. # 1-4, Ex. C]. Pursuant to the terms of the financing statement, Defendant was granted a lien in "[a]ll accounts receivable and all business assets, whether now owned or hereafter acquired by debtor, wherever located, together with any replacements thereof and additions and accessions thereto and all products and proceeds of the foregoing." [*Id.*].

On December 8, 2011, Plaintiffs filed for Chapter 7 bankruptcy protection. [Case No. 11-36509, Doc. # 1]. Defendant was not initially notified of Plaintiffs' Chapter 7 filing, as Plaintiffs did not list Defendant as a creditor in their bankruptcy schedules. [*Id.*, Doc. ## 1, 6].

In its Motion, CBC states that it "happened upon the [Plaintiffs'] bankruptcy filing in February of 2012, when Plaintiffs and Defendant were discussing a possible settlement of the

---

[1] The court takes judicial notice of the contents of its case docket and the Debtors' schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979)(stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

[2] Copies of the note(s) and security agreement(s) were not offered into evidence by either Plaintiffs or Defendant.

outstanding balance owed to Defendant. [Doc. # 24, p. 3]. Upon discovery of Plaintiffs' bankruptcy filing, CBC discontinued all contact with Plaintiffs. These factual allegations were also asserted in the affidavit of Misty A. Baker, CBC's Vice-President, Special Assets Group. [Doc. #24-1, Exhibit A]. Ms. Baker's affidavit avers that between the time of Plaintiffs' filing on December 8, 2011, and January 31, 2012, CBC was not notified, either informally by Plaintiffs or formally through the court, that Plaintiffs had filed for Chapter 7 protection. [*Id.*, ¶ 4]. On March 2, 2012, Plaintiffs filed an Amended Summary of Schedules and an Amended Schedule F, adding CBC to their schedules as a creditor holding unsecured nonpriority claims. [Case No. 11-36509, Doc. # 18]. This caused the adjournment of the §341 Meeting of Creditors, which was continued to April 2, 2012. [*Id.*, Doc. # 19].

On August 2, 2012, the Plaintiffs received their order of discharge from the court. [*Id.*, Doc. # 49]. The Debtors' Chapter 7 was an asset case, and court records reflect that Citizens Banking Company received a dividend of $324.32 on its claim for $49,987.10. [*Id.*, Doc. #59-1].

At an unspecified point in time, between August 2, 2012 and January 1, 2014, Plaintiffs allege that they contacted Defendant and requested that CBC remove the UCC-1 filing, based upon the underlying obligation having been discharged in their bankruptcy. Plaintiffs further allege in their Motion that CBC replied that the UCC-1 would "only be withdrawn after Plaintiff surrendered the full amount demanded by [CBC]." [Doc. # 23, p. 3]. On January 1, 2014, Plaintiffs' attorney sent a letter to CBC, requesting that CBC withdraw the UCC filing, as "11 USC 524 of the bankruptcy code requires that all collection actions on the part of a creditor be discontinued" after debtors receive their discharge. [Doc. 1-6, Ex. E]. CBC did not respond to Plaintiffs' request.

On January 14, 2014, Defendant filed a UCC-3 continuation statement with the Ohio Secretary of State. Several months later, on May 2, 2014, Plaintiffs filed the Complaint now before the court, requesting the court to find that CBC violated the discharge injunction. Plaintiffs seek injunctive relief, in the form of the court ordering that Defendant remove the UCC-1 filing. Plaintiffs also request punitive damages in the amount of $10,000.00, along with legal fees "and any other remedy this Court would find appropriate." [Doc. # 1].

In its answer to the Complaint, CBC states that it is a secured creditor, and as such, may file pursuant to 11 U.S.C. §362(b)(3) "a UCC continuation statement to continue perfection of its security in its collateral." [Doc. # 5, ¶ 2]. CBC also maintains that filing a UCC continuation statement in an

3

effort to maintain its perfection of a security interest in collateral is not a violation of the discharge injunction under 11 U.S.C. §524(a)(2).

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*. "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999).

The fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See*,

*Parks v. LaFace Records*, 329 F.3d 437, 444-445 (6th Cir. 2003); *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* §2720 (1998).

## II. Plaintiffs' Claims Under §524 and Motion for Summary Judgment

Plaintiffs move for summary judgment on their claims seeking injunctive relief, punitive damages, and legal fees, arguing that Defendant committed a contemptuous act and violated the discharge injunction set forth in 11 U.S.C. §524(a)(2), in both refusing to remove the UCC-1 financing statement and in filing a UCC-3 continuation statement in January 2014.

Once an order granting a discharge is entered, §524(a) of the Bankruptcy Code gives rise to an injunction against "an act, to collect, recover or offset any such debt [discharged under §727] as a personal liability of the debtor. . . ." 11 U.S.C. §524(a)(2).

In the Sixth Circuit, there is no statutory private right of action for damages under 11 U.S.C. §524 or 11 U.S.C. §105 for violation of the discharge injunction. *Pertuso v. Ford Motor Co.,* 233 F.3d 417, 421-23 (6th Cir. 2000). However, violation of the discharge injunction does expose a creditor to potential contempt of court. *Id.*; *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916 (7th Cir.2001); *Lohmeyer v. Alvin's Jewelers (In re Lohmeyer)*, 365 B.R. 746, 749 (Bankr. N.D. Ohio 2007). "A creditor who undertakes to collect a discharged debt from a debtor violates the discharge injunction and is in contempt of the court that issued the discharge order." *Fonner v. Overdorf (In re Fonner)*, 262 B.R. 350, 358 (Bankr. W.D. Pa. 2001)[3]. If the contempt is established, the injured party may be able to recover damages as a sanction for the contempt. *Chambers v. GreenPoint Credit (In re Chambers)*, 324 B.R. 326, 329 (Bankr.N.D.Ohio 2005).

---

[3]/ "The distinction between a statutory right of action and civil contempt is more than just nomenclature." *In re Lohmeyer*, 365 B.R. 746, 755 n.2 (Bankr. N.D. Ohio 2007). "The primary purpose of a civil contempt order is to compel obedience to a court order and compensate for injuries caused by noncompliance." *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir.2000)(quoting *TWM Manuf. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983)). The party alleging contempt has the burden of establishing contempt by clear and convincing evidence, *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 722 (6th Cir.1996), not just by a preponderance of the evidence as is routine in civil matters. The sanctions for contempt are intended to be either compensatory, based on evidence of actual loss, *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391 (6th Cir.1991), or coercive through payments to the court to abate violation of the order, *id.* at 1400. Punitive damages as requested in the complaint in this case are not compensatory in nature. The weight of authority is that bankruptcy courts lack authority to punish and impose sanctions for criminal contempt. *See, Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192–1195 (9th Cir.2003); *but see, In re Perviz*, 302 B.R. 357, 373 (Bankr. N.D. Ohio 2003). Finally, the imposition of sanctions for civil contempt is within the sound discretion of the bankruptcy court and reviewed for abuse of discretion. *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 78 (S.D. Tex. 2000).

5

To prevail in a civil contempt proceeding, a plaintiff must prove that the defendant "'violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006)(*quoting*, *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991)). In the context of a discharge injunction, a debtor must demonstrate that the defendant (i) violated the discharge injunction (and thus the order granting the discharge) and (ii) did so with knowledge that the injunction was in place. *In re Franks*, 363 B.R. 839, 843 (Bankr.N.D. Ohio 2006). The plaintiff bears the burden of proving both elements, violation and knowledge, by clear and convincing evidence. *Liberte Capital Group*, 462 F.3d at 550. The Sixth Circuit requires that actual knowledge give rise to contempt, as opposed to merely constructive knowledge. *See, Newman v. Ethridge (In re Newman)*, 803 F.2d 721 (table), 1986 WL 17762 at *1, 1986 U.S. App. LEXIS 29820 at *3 (6th Cir. 1986)("Notice of the bankruptcy need not be formal; the court is to look to whether the creditor had actual knowledge."); *Franks*, 363 B.R. at 843.

The focus of Plaintiffs' Motion is that Defendant's filing of the UCC-3 continuation statement is a violation of the discharge injunction, due to the "after-acquired property clause" contained within the UCC-1 financing statement, and that the clause "is invalid under 11 U.S.C. §552." [Doc. # 23, p. 4]. Plaintiffs believe that the financing statement, which lists as collateral, "[a]ll **accounts receivable** and all business assets, **whether now owned or hereafter acquired by debtor**..." (emphasis added), allows Defendant to collect on discharged debt, by going after property "hereafter" acquired by the Debtors.

Similarly, in Plaintiffs' Response, the primary focus is on again on 11 U.S.C. §552(a), which reads, in relevant part, that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." [Doc. # 23, p. 6]. Therefore, Plaintiffs allege, Defendant's refusal to remove the financing statement and the act of renewing the financing statement, that contains an after-acquired property clause, violates the discharge injunction as a matter of law.

In the case at bar, Plaintiffs have not satisfied the first element necessary for a finding of contempt: clear and convincing evidence that the discharge injunction has been violated. As will be discussed in Section III of this Opinion, the court finds that the allegations, and the evidence submitted, are insufficient to find that a violation of the discharge injunction has occurred.

6

Defendant's actions in not removing the lien, and in renewing it, do not violate the discharge injunction as a matter of law, as Plaintiffs contend. Accordingly, Plaintiffs' Motion for Summary Judgment will be denied.

### III. CBC's Motion for Summary Judgment on Claims under §552(b)(1)

Defendant asserts that neither its renewal of its prepetition lien nor its refusal to release the UCC financing statement is an action in violation of the Debtors' discharge injunction.[4]

It is well-established that the purpose of the discharge injunction of §524 is to promote the fresh start policy of the Bankruptcy Code by protecting debtors against actions brought on prepetition debts. *In re Jarrett*, 293 B.R. 127, 131 (Bankr. N.D. Ohio 2002)(*citing, Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46, 49 (9th Cir. BAP 1997)); *In re Zarro*, 268 B.R. 715, 720 (Bankr. S.D.N.Y. 2001)). However, as the Supreme Court has stated: "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam* —while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991)

Ordinarily, valid prepetition liens pass through bankruptcy unaffected. *Dewsnup v. Timm*, 502 U.S. 410, 417-418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); *In re Medcorp.*, 472 B.R. 444, 449 (Bankr. N.D. Ohio 2012); *In re Rountree*, 448 B.R. 389, 401-402 (Bankr. E.D. Va. 2011). More precisely, if valid liens have not been disallowed or avoided, they survive the *in personam* discharge of the underlying debt. *See*, *Estate of Lellock v. Prudential Ins. Co. Of America*, 811 F.2d 186, 189 (3rd Cir. 1987); *Stevenhagen v. Helms*, 900 F.2d 260 (Table), 1990 WL 47474, 1990 U.S. App. LEXIS 6133 (6th Cir. April 18, 1990); *In re Cusato*, 485 B.R. 824, 828 (Bankr. E.D. Pa. 2013); *In re Johnson*, 439 B.R. 416, 428 (Bankr. E.D. Mich. 2010); *In re Johnson*, 386 B.R. 272, 281 (Bankr. D. Idaho 2008); *United Presidential Life Ins. Co. v. Barker*, 31 B.R. 145, 148 (N.D. Tex. 1983). Thus, "[i]n the absence of a lien avoidance action, a secured creditor may look to the property securing the claim for satisfaction

---

[4] CBC's citation to §362(b)(3) as authority allowing renewal of its lien is not persuasive. Upon the granting of the Debtors' discharge on August 2, 2012, the automatic stay terminated, and it was immediately replaced by the injunction against the collection of discharged debts. *See*, §362(c)(2)(C); §524(a)(2); *In re Koper*, 516 B.R. 707, 714 (Bankr. E.D.N.Y. 2014). Section 362(b)(3)'s exception to the automatic stay appears to reflect an approach that is consistent with the case law discussing the exercise of postdischarge *in rem* rights, including renewal and continuation of liens. However, because the automatic stay was previously terminated by operation of law, §362(b)(3) is not controlling on these issues.

7

of its prepetition lien, but may not look to the debtor personally for payment." *In re Mayes*, 294 B.R. 145, 150 (10th Cir. BAP 2003).

The issue in this case is: does CBC's refusal to remove its valid prepetition lien, and the renewal of that lien, constitute an action taken against Debtors *in personam*, violating the discharge injunction of Section 524?

As a general proposition, where liens have "passed through bankruptcy unaffected", a creditor may exercise valid lien rights postdischarge without violating the discharge injunction. "Creditors are not prevented from postdischarge enforcement of a valid lien on property of the debtor that existed at the time of the entry of the order for relief, if the lien was not avoided under the Code." 4 Collier on Bankruptcy, ¶524.02[2][d] at 524-31 (16th ed. 2015); *see also, In re Kinion*, 207 F.3d 751, 757 (5th Cir. 2000)("the injunction may not prevent a secured creditor from exercising its legal remedies against the collateral if the secured status of the loan has not been challenged by appropriate and customary bankruptcy procedures.").

There are number of decisions that have specifically held that renewal of a prepetition lien, securing a debt where the underlying personal liability has been discharged, is not a violation of the discharge injunction. *See*, *In re Jarrett*, 293 B.R. 127, 132 (Bankr. N.D. Ohio 2002)(citing cases); *In re Dinatale*, 235 B.R. 569, 573 (Bankr. D. Md. 1999)("the court finds that such an attempt to revive or renew the existing tax lien on Debtor's property post-discharge does not violate the discharge injunction."); *In re McCorkle*, 209 B.R. 773, 777 (Bankr. M.D. Ga. 1997)("any attempt to renew or continue a lien's enforceability is an *in rem* action which would not violate the section 524 discharge injunction."); *In re Johnson*, 2014 WL 5812418 at *4, 2014 Bankr. LEXIS 4666 at *9 (Bankr. N.D. Ala. Nov. 10, 2014)("the 2007 lien renewal did not violation the discharge injunction"); *Pancoast v. McColl's Corp. (In re Pancoast)*, 2007 WL 1079969 at *2, 2007 Bankr. LEXIS 13218 at *4 (Bankr. N.D. Cal. April 4, 2007)("Because CCBC's post-discharge conduct in attempting to renew its lien through state court procedures constituted *in rem* actions, CCBC did not violate the bankruptcy discharge."); *In re Transtrum*, 2006 WL 2556699 at *3, 2006 Bankr. LEXIS 2313 at *8 (Bankr. D. Idaho June 1, 2006)("Because Creditor's lien was unaffected by Debtor's discharge, Creditor could proceed *in rem* against Debtors' property after bankruptcy. Creditor did not violate the discharge injunction when it sought to renew its judgment lien or to satisfy its claim from any proceeds realized from the sale of the Loop Road property."); *and Cf.*, *In re Larson*, 979 F.2d 625, 627 (8th Cir.

1992)(filing necessary addendum to mortgage required for continued validity under state law did not violate the automatic stay); *In re O'Callaghan*, 342 B.R. 364, 367 (Bankr. M.D. Fla. 2006)("the renewal or continuance during a bankruptcy case of an existing, prepetition lien does not violate the automatic stay.").

The Debtors arguments focus on the "after-acquired" language in the financing statement's description of the collateral. There are two aspects of the description of the collateral in the UCC-1 that are forward looking: 1) the described collateral includes "products and proceeds"; and, 2) the collateral includes property "hereafter acquired". The Bankruptcy Code deals with these two types of collateral very differently.

Section 552(b)(1) specifically provides:

[I]f the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by the security agreement. . . .

Thus, the "products and proceeds" provision of the security agreement remains in effect to the extent allowed by this specific provision of the Bankruptcy Code. To the extent there are postpetition "products and proceeds" of the described collateral (accounts receivable and all business assets), CBC's lien can attach to those assets.[5] *See*, *In re Bumper Sales, Inc.*, 907 F.2d 1430, 1436 (4th Cir. 1990)("[p]roceeds coverage, but not after-acquired property clauses, are valid under title 11.").

In contrast, Section 552(a) sets forth a clear line of demarcation for all other property that is acquired postpetition based upon a security agreement:

Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

This provision cuts off the application of the after-acquired property clause, meaning that any property acquired by the debtors after the commencement of the Chapter 7 case (other than products and proceeds) is not subject to the security interest of CBC. As the Supreme Court recently stated in

---

[5]/ No evidence regarding the identity or value of the collateral has been submitted by the parties to this action.

9

*Harris v. Viegelahn*: "a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing. §541(a)(1). Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions." *Harris v. Viegelahn*, ___ U.S. ___, 135 S.Ct. 1829, 1835, ___ L.Ed.2d ___ (2015)(emphasis in original).

Accordingly, §552(a) prevents the after-acquired property language in CBC's security agreement and financing statement from creating a lien against accounts receivable or business assets acquired by the Debtors after the filing of the Chapter 7 petition. *In re Skagit Pacific Corp.*, 316 B.R. 330, 335 (9th Cir. BAP 2004)("Section 552(a) cuts off security interests on property acquired by the debtor after the petition date even if there is an "after-acquired" clause in the security agreement."); *In re Ledis*, 259 B.R. 472, 477 (D. Mass. 2001). Renewal of the lien does not change the fact that the after-acquired property clause was cut off by Section 552(a).

The fact that there may be some potential for confusion[6] regarding the extent of CBC's lien does not make renewal of that lien a violation of the discharge as a matter of law. Instead, the law is clear that validly secured creditors may proceed *in rem* against prepetition assets, including filing renewals of liens or continuation statements. Where there is a prepetition security agreement, Chapter 7 debtors are protected by §552(a)'s prohibition[7] against post-filing attachment of the lien to after-acquired property, even if the nature of the lien, or the language of the security agreement, might suggest otherwise.

Accordingly, Debtors cannot prevail on a Motion for Contempt that is based upon the legal position that renewal of the lien with after-acquired property language violates the discharge injunction as a matter of law.

For a finding of contempt for violation of the discharge injunction, Debtors would have to plead and prove more than just the renewal of a lien with after-acquired property language. There would have to be a showing of: 1) attempts to collect the discharged debt from the Debtors; 2)

---

[6]/ Debtors asserted in their Complaint that they were denied a business loan because of the CBC UCC filing. [Doc. #1, ¶5]. No evidence was offered in support of this allegation.

[7]/ "Security agreement", as used in §552(a), is a defined term in the Bankruptcy Code. See, §101(50). A more difficult legal analysis is involved in determining when and how statutory liens and judgment liens are cut off.

14-03056-jpg    Doc 34    FILED 06/01/15    ENTERED 06/01/15 16:47:42    Page 10 of 13

attempts to collect the discharged debt by seizure or liquidation of assets that the Debtors acquired postpetition; or 3) that the actions taken in regard to the lien were not actions taken *in rem* against prepetition assets, but were, instead, a pretext or subterfuge being used to coerce payment from the Debtors or their postpetition assets.

The only factual allegation that might support an inference that the renewal of the lien was not an *in rem* action is the general assertion that CBC refused to release the lien without payment. [Doc. #1, ¶5]. However, this type of demand for payment by a secured creditor (particularly in response to a demand for a lien release) has been held not to be a violation of the discharge injunction. "A secured creditor's demand for payment as a condition of satisfying a valid lien on property is not an act to collect a debt 'as a personal liability of the debtor' prohibited by §524(a)(2)." *In re Cusato*, 485 B.R. 824, 828 (Bankr. E.D. Pa. 2013); *In re Gomez*, 2014 WL 5454227, 2014 Bankr. LEXIS 4517 (Bankr. D.P.R. Oct. 24, 2014).[8]

This does not mean that a creditor's decision to refuse to release a lien, or to renew or continue a lien, will never result in a finding of contempt for violation of §524(a). The *Jarrett* decision discusses one way in which a violation of the discharge injunction may be shown:

> . . . a violation of the discharge injunction will be found to exist if a creditor, by renewing its prepetition lien, is attempting to gain a lien on any postpetition property acquired by a debtor, subject, however, to this one specific limitation: the underlying debt held by the creditor must have been discharged in the debtor's bankruptcy.

*In re Jarrett,* 293 B.R. at 133.

There is also case law holding that a creditor may be held in contempt where a debtor can show that refusal to release a lien, or renewal or continuation of a lien, is being done for pretextual reasons or as a subterfuge. In other words, where the action is taken for purposes of coercion and not to continue a security interest in prepetition assets, there may be a basis to hold the creditor in contempt. *See*, *In re Paul*, 534 F.3d 1303, 1308-1310 (10th Cir. 2008)(discussing the "Objective-Coercion Principle"); *In re Pratt*, 462 F.3d 13, 19 (1st Cir. 2006)("In assessing violations of the automatic stay and the discharge injunction, the core issue is whether the creditor acted in such a way as to "coerce"

---

[8]/ Where the underlying facts are different - for example where the creditor acknowledges that the collateral securing the lien is valueless - the law may view a refusal to release a lien differently. *See*, *In re Pratt*, 462 F.3d 13 (1st Cir. 2006).

14-03056-jpg    Doc 34    FILED 06/01/15    ENTERED 06/01/15 16:47:42    Page 11 of 13

or "harass" the debtor improperly."); *In re Evans*, 289 B.R. 813, 826 (Bankr. E.D. Va. 2002)("That, however, does not permit the bank to cloak its efforts to recover on the discharged debt in the false rubric of seeking the recovery of its leased car.").

In examining whether a creditor is, in fact, proceeding to preserve and protect its *in rem* rights, versus acting in a way that is "objectively coercive", one factor that courts have looked at is whether there was any value in the underlying collateral, and thus any legitimate economic reason for maintaining the lien. *See*, *In re Casarotto*, 407 B.R. 369, 377-378 (Bankr. W.D. Mo. 2009).

For example, if a creditor were to renew a lien knowing that there was no remaining prepetition property subject to that lien, or that the collateral was valueless, that might be grounds for finding a violation of the discharge injunction. However, determining whether actions taken under the guise of exercising *in rem* rights were proper, or improper, is something courts struggled with. "[T]he line between forceful negotiation and improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts." *In re Canning*, 706 F.3d 64, 73 (1st Cir. 2013), *quoting*, *In re Pratt*, 462 F.3d at 19.

The absence of a legitimate economic reason to maintain the lien is not something the court will assume. It is up to the Plaintiffs to establish and plead facts, like the non-existence of collateral or the absence of value, and in response to a motion for summary judgment, offer proof in support of those allegations. While this puts a burden on debtors who have property subject to continuing prepetition liens, the protections against *in personam* actions for the collection of discharged debts are simply not automatically extended to actions *in rem*.

Plaintiffs' Complaint did not address the status of the accounts receivable, or the other business assets that were part of the security agreement. Nor was any proof regarding the underlying collateral offered in support, or opposition, to summary judgment.[9] Accordingly, there is no genuine issue of material fact properly before the court regarding CBC's actions being a pretext or subterfuge used in an attempt to coerce collection of a discharged debt from either the Debtors' personally, or property that was acquired after the filing of the Chapter 7 case.

Accordingly, Defendant is entitled to summary judgment on the claim asserted in Plaintiffs'

---

[9]/ Plaintiffs did not file any affidavits in this adversary proceeding, nor were any documents filed that related to the status of the underlying assets.

Complaint because the Debtors have neither pled nor alleged facts that would support a finding that the discharge injunction was violated.

### CONCLUSION

Plaintiffs have not met their burden of proof and have not provided the court with clear and convincing evidence that Defendant has attempted to collect on after-acquired property obtained by the Plaintiffs postpetition in violation of the discharge injunction and §552(a). Although Plaintiffs briefly allege that Defendant is attempting to obtain "Plaintiffs' current accounts receivable," they provided the court with no evidence of Defendant's actions. [Doc. # 23, p. 7]. Conversely, by means of the uncontested affidavit of Misty Baker [Doc. # 24-1, Exhibit A], Defendant has provided the court with unrebutted evidence that it has not demanded any payment from Plaintiffs nor attempted to collect upon, or claim a lien upon, any property that the Plaintiffs may have acquired postpetition. As such, Defendant is entitled to summary judgment, and its Motion for Summary Judgment will be granted.

For the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 23] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant's Combined Motion for Summary Judgment and Memorandum Contra to Plaintiffs' Motion [Doc. # 24] be, and hereby is, **GRANTED**.

###